GastoN, J.
 

 William McEntire died in March, 1832, having previously made his last will and testament, whereof he appointed Prior McEntire and his wife Rebecca, execu
 
 *317
 
 tor and executrix, who, after the death of the testator, duly proved the said will. . By this will the testator bequeathed, among other things, to his said wife, a negro woman
 
 Binah,
 
 during her life or widowhood, and in a subsequent clause the will disposed of Binah as follows : “ I give and bequeath to my daughter, Rachel Covington, and the heirs of her body, at the decease of my wife or her widowhood, one negro woman named Binah.” To the bequest of Binah to the widow, the executor and executrix assented. The widow died in 1842, and, upon her death, Binah was taken possession oi by the plaintiff David, the husband of the plaintiff, Rachel Covington. But Binah’s issue, born after the death of the testator and in the life-time of the widow, of which four were then living, were taken into possession by Prior McEntire, as the surviving executor, and a claim made by the defendants, that he should hold them for himself and the other defendants and the plaintiff, if entitled thereto in common, under the residuary clause in the will of William McEntire. This bill was then brought, and its prayer was, that the defendant Prior McEntire might be decreed to assent to the bequest to the plaintiff Rachel, and deliver the said increase of Binah to the plaintiffs. The defendants answered together, and admitted all the allegations in the bill, stated that the children so born of Binah were in the possession <jf the defendant, Prior McEntire, as the surviving executor of William McEntire; that it was contended by himself and the other defendants, that, according to the true construction of the will, the issue of Binah did not pass under the bequest to the plaintiff Rachel,'but passed under the residuary clause of the will, which will was appended to and made af part of their answers; that it had been agreed between the plaintiffs and the defendants, that if
 
 this
 
 were the true construction of the will, the plaintiffs should take one of the children of Binah, (Catharine,) and the sum of fifty-five dollars, as their full share thereof, and that the defendant Prior was willing and ready to dispose of the said negroes, as he might be ordered and decreed by the court, and prayed such a decree as would settle the rights of all the parties, and give him full protection. The cause was
 
 *318
 
 brought to a hearing upon the bill and answer, and a decree made declaring the plaintiffs entitled to the negroes, and ordering the executor to deliver them to the plaintiffs. From this decree the defendant appealed.
 

 It has been the settled law of North Carolina, ever since the case of
 
 Tims
 
 and Potter, decided more than fifty years ago, that where there is a limitation of a female slave to one for life, with remainder over to another, the increase of such slave, born during the life of the first tenant, go over with the slave herself to the person in remainder.
 
 Tims
 
 v Potter, 1 Hay, 234.
 
 Glasgow
 
 v
 
 Flowers,
 
 1 Hay. 233.
 
 Erwin
 
 v
 
 Kilpatrick,
 
 3 Hawks, 456. This doctrine is not questioned on the part of the appellanls, nor do they contend that the clause, under which the plaintiff claims, taken
 
 per se, is
 
 not a complete gift of Binah, and consequently of her increase after the death of the testator, to the plaintiff Rachael. But they insist that it is competent for a testator, in the gift of the mother to the ulterior legatee, to make an exception of such increase, and that this exception, though not contained in the clause containing the gift, is to be implied from another clause in the will. In the clause referred to, the Testator, who had in a former part of the will bequeathed to his daughter Dulcinea, a negro girl Nan, after the death or widowhood of his wife, adds these words : “ and also the increase of the above named Nan
 
 from noto,
 
 to go to the said Dulcinea and the heirs of her body.” And the argument is, that had the testator intended to include the increase of Binah, in the gift of Binah to his daughter Rachel, he would have been equally explicit in declaring that intent.
 

 To this argument there are two answers, either of which is satisfactory. In the first place, the law holds that the increase are appurtenant to, and forma part of the parent stock, and therefore become the property of the ulterior legatee, unless it can be
 
 dearly
 
 collected from the will, that the testator
 
 excluded
 
 the increase from the gift of that stock.—
 
 Knight
 
 v
 
 Wall,
 
 1 Dev. & Bat. 125. Now it is impossible that any words, however strong, in another clause of the
 
 *319
 
 will, declaring an intention to
 
 include
 
 the increase in the gift of another female negro to another child, can be to overrule the legal meaning of the clause under considera-lion, with which it is in no way connected, and to which it in no way refers. The expression in the one clause of what the law implies, is but superfluous, and the omission to express it in the other, leaves that clause to its legal operation. Further — In the clause respecting the disposition of Nan, the testator does not express merely what the law implies: for he makes therein a gift to the ulterior legatee, not only of the issue which the mother may have .after his death, but of such as may be born before his death, and after the execution of his will. But for the particular words of this clause, these would not pass by the gift of Nan.
 
 Jones
 
 v Jones, Conf. Rep. 310.
 
 Powell
 
 v
 
 Cook,
 
 4 Dev. 499. We have not therefore the least doubt but that the plaintiffs are entitled to the negroes as declared in the decree below.
 

 But another objection has been taken to that decree. It is objected, that, supposing the plaintiffs thus entitled, they had a clear remedy at law, and, therefore, their case was not a proper one for the cognizance of a court of equity. It is stated in the bill and admitted by the answer, that the executors of the testator assented to the bequest for life, and this assent operated, in law, as an assent to the ulterior bequest. We have, therefore, no doubt, but that the plaintiffs might have treated the possession of the executor as a wrongful act, and have brought trover or detinue against him for the slaves.
 
 But
 
 we do not, therefore, feel ourselves bound to reverse the dercree as erroneous. An objection, that a Court of Equity ought not to take cognizance of a cause because there is adequate relief at law, if entertained at all after the defendants have answered in chief and thereby submitted the cause to the cognizance of the court, will be entertained with great reluctance. But this is not a case of merely passive acquiescence in the jurisdiction of the court. One of the defendants had taken possession of the property
 
 as executor,
 
 claiming to hold as trustee for those, whoever they
 
 *320
 
 might be, beneficially entitled under the will.
 
 All,
 
 setting up a claim to this beneficial interest acquiesced iñ his holding in this fiduciary character, and united with him in praying the court, which has jurisdiction in matters of trust, to declare, for whom in conscience he should be declared to hold. The assent to the bequest for life was treated by all as one limited to
 
 that
 
 bequest, and, so limited, the case became one appropriate for the cognizance of a Court of Equity. The decree in the court below must be affirmed with costs.
 

 Per Curiam. Decree below affirmed with costs.